NEHEMIAH P. CLARKE and another *vs.* HALL & DUCEY LUMBER COMPANY.

June 24, 1889.

**Logs—Contract held Affected by Usage of Boom Company.**—The Mississippi & Rum River Boom Company receives and handles all logs coming down the Mississippi river to Minneapolis, and its methods of business and usage in receiving, surveying and turning out logs, and collecting charges, are well established and generally known; and dealers in logs in that market are presumed to contract with reference to such usage where there is nothing in the agreement to exclude the inference.

**Same—By which Party Boom Charges are to be Paid—Evidence of Usage.**—In a controversy between the parties to this action in respect to liability for the charges of the boom company for scaling logs sold by plaintiff to defendant, and which were necessarily handled and scaled by such company, an issue was made as to whether it was plaintiff's or de-

fendant's duty to pay such charges. *Held*, that under such issue evidence of the general usage of the business in that market was properly received.

Appeal by defendant from an order of the district court for Hennepin county, refusing a new trial after a trial before *Young*, J., and verdict of $409 directed and returned for plaintiffs.

*Geo. C. Ripley, C. E. Brennan*, and *S. A. Booth*, for appellant.

*Hammons & Hammons* and *Jelley & Hayne*, for respondents.

VANDERBURGH, J. The complaint sets up a claim or cause of action for the boomage of certain logs therein described in behalf of the Mississippi & Rum River Boom Company, and which it is alleged has been duly assigned to the plaintiffs. The substance of defendant's answer is a denial that the services were rendered for the defendant, and that it ever agreed to pay the boomage, or that it was its duty to pay the same. The answer also sets up and alleges that the logs were sold and delivered to the defendant by one of the plaintiffs, and that they were boomed and turned over to the defendant by the boom company at the request of the plaintiffs, whose sole duty it was to pay the boomage. The reply denies that it was the sole duty, or the duty at all, of N. P. Clarke or these plaintiffs to pay the boom company for such services. This was understood by the parties to raise the issue as to which party is liable for the charges of the boom company upon logs sold, and by direction of the seller turned over to the purchaser by the boom company, the same being handled and surveyed by such company.

1. The first assignment of error is that the court erred in admitting evidence that in case of a sale of logs to be delivered at Minneapolis, boom scale, the contract being silent as to who should pay for the boomage, custom requires the purchaser to pay it. We think the evidence was properly received. It appears that the Mississippi & Rum River Boom Company receives and handles all the logs coming down the Mississippi river to Minneapolis, and the established rules, methods, and usages of business of that company, in receiving, handling, scaling logs, and collecting boomage, are well known to lumbermen and log-owners operating on that river. The parties are

dealers in logs and lumber in the Minneapolis market, and the defendant has for years owned and operated a mill and private boom, into which logs are turned by the boom company, which is entitled to demand and collect charges therefor. Dealers in logs in that market may be presumed to contract with reference to the established usage of the business in respect to the delivery of logs and the payment of fees for scaling and handling logs when selected and turned out to the purchaser, where there is nothing in the agreement to exclude the inference. *Outwater* v. *Nelson,* 20 Barb. 29; *Walls* v. *Bailey,* 49 N. Y. 464, 470. In the case at bar the evidence shows a sale of logs by the plaintiffs, which the boom company must handle, and, as respects the actual manual delivery, must turn over to the defendant. The quantity is to be determined by scaling, and its charges in the premises must of course be paid either by the buyer or seller; and whether the buyer is to pay them may be determined by evidence of the usage of the business as generally received and acted on in that market. *Miller* v. *Insurance Co. of North America,* 1 Abb. N. C. 470, 476; *Robinson* v. *United States,* 13 Wall. 363, 366. The evidence on that subject offered and received was, therefore, admissible in this case. We think the evidence, which is not conflicting and not controverted, was sufficient to establish the general and uniform usage of the business as claimed by these plaintiffs, and to raise the presumption that the defendant had knowledge of it, and that the parties contracted with reference to it. *Walls* v. *Bailey,* *supra.*

2. There is nothing in the special contract in question to take this case out of the application of the general rule as above stated. By this contract, which relates to a portion of the logs in question, the plaintiff N. P. Clarke agrees to "turn" to the defendant logs of certain low grades, to be selected out, yet it appears therefrom that the logs are to be handled and scaled as usual by the boom company, the plaintiffs "to have the privilege of putting on a man to instruct the boom company what to turn; and it is understood that Hall & Ducey Lumber Company are to have the poor dimension logs, price $7.50 per M., boom scale, to be paid cash 15th of each month for logs delivered during preceding month." The logs were therefore delivered

by direction of the plaintiffs, and turned over in the usual way, and scaled by the boom company, the plaintiffs to aid in sorting them. We see no error or prejudice in the ruling of the court in respect to this contract, and in refusing to submit it to the inspection of the witnesses to construe and determine whether the usage, as testified to by them, was applicable to such a case.

3. Under the issues made by the answer and reply, as before intimated, the evidence of usage or custom was admissible. These issues were accepted, and the parties went to trial on them. It was therefore competent for the plaintiffs to introduce any evidence, custom or usage included, tending to show that it was the defendant's duty, and not theirs, to pay the boomage, and to establish the defendant's liability and negative their own. *Miller* v. *Insurance Co. of North America, supra.* As there was substantially no conflict in the evidence, we are of the opinion that the court did not err in ordering a verdict.

Order affirmed.