RICHARD F. SAPPA AND ANOTHER v.
STRITE-ANDERSON MANUFACTURING COMPANY.
LEON J. COHEN, d.b.a. TIME ENGINEERING,
RESPONDENT.

221 N. W. 2d 660.

May 10, 1974—No. 44269.

*Johnson, Thompson, Klaverkamp & James* and *Bruce B. James*, for appellant.

*Lapp, Lazar, Laurie & Smith, Gerald T. Laurie,* and *David A. Libra,* for respondent.

Heard before Kelly, Yetka, and McRae, JJ., and considered and decided by the court.

GORDON L. MCRAE, JUSTICE.*

Appeal by defendant from a judgment entered for plaintiff, Leon J. Cohen, following trial in district court of an action on a contract.

Richard F. Sappa and Leon J. Cohen (plaintiff) brought separate actions against defendant to recover commissions claimed to be due for services rendered in procuring for defendant a contract with A. C. Electronics Division of General Motors Corporation, a firm located in Milwaukee. These actions were consolidated for trial and were heard by the district court sitting without a jury. The trial court concluded that defendant was entitled to judgment against Sappa and that plaintiff Cohen was entitled to judgment against defendant in the sum of $12,000. The only appeal is by defendant from the judgment entered for plaintiff Cohen. In ordering judgment for plaintiff, the trial court found that he had performed services for defendant under an implied contract and that the reasonable value of these services was $12,000. We affirm.

Defendant, Strite-Anderson Manufacturing Company, is a closely held corporation involved in die casting and plastic molding. Richard F. Sappa was at the time involved herein a manufacturer's representative for defendant within a designated territory. Plaintiff, 59 years of age at the time of trial, maintains

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

a business office in Minneapolis and had been involved in the mechanical trades and sales engineering for 30 years. In the early spring of 1966, plaintiff was personally acquainted with the officers of defendant and was familiar with its operations. In March 1966, while returning on an airplane from a business trip, plaintiff met a cost engineer from A. C. Electronics. That company had recently obtained a prime contract in the "M 905 fuse" program, its first ordnance venture requiring die cast components. Having learned in this meeting that A. C. Electronics was looking for a supplier of component parts, plaintiff arranged a meeting between officers of defendant and employees of A. C. Electronics. This meeting led to negotiations which culminated in defendant's being awarded a contract calling for delivery to A. C. Electronics of die cast components for a sales price of $395,198. Plaintiff brought his action claiming an express agreement on the part of defendant to pay a 5-percent commission on the amount of the contract. It appears that prior to the commencement of the action defendant, conceding that plaintiff was entitled to be compensated for his services, had offered to pay him $500 as a "finder's fee." In its answer, however, defendant denied any agreement to pay a 5-percent commission and denied that the sales to A. C. Electronics had been made as a result of plaintiff's efforts. On the claim made by Sappa under his contract as a manufacturer's representative for commissions due in the same transaction, the trial court found for defendant.

Without further detailing the voluminous and often conflicting testimony, it can be said that the following evidentiary facts find support in the record: That plaintiff was responsible for defendant's obtaining a substantial contract with A. C. Electronics; that the services rendered by plaintiff were more than those of a mere "finder" and were, in fact, essentially those of a manufacturer's representative; that plaintiff was qualified by training, experience, and knowledge of defendant's business to perform the services of a manufacturer's representative in this case; that defendant had stipulated with Sappa that if the

latter was entitled to any compensation for his services as a manufacturer's representative for defendant in the A. C. Electronics transaction, the amount would be $11,895.18; and that, despite defendant's claim that there was no customary commission for manufacturers' representatives in the industry, there was a customary commission of 5 percent less tooling costs, which commission in this case would have amounted to approximately $18,700. At trial defendant's officers conceded that plaintiff was entitled to some compensation. Opinion evidence relating to the value of plaintiff's services ranged from $500 to $19,760.

■ Defendant concedes the fact of a contract but contends that the trial court erred in determining the amount due plaintiff under said contract. Thus, the sole issue presented is whether the evidence supports the trial court's finding that services rendered by plaintiff on behalf of defendant had a reasonable value of $12,000. It is defendant's position that the trial court accorded undue weight to, or treated as controlling, two items of evidence on the issue of damages and as a consequence ordered judgment in an excessive amount. These two items of evidence are (1) the stipulated amount that would have been due Sappa for his services as a manufacturer's representative had he prevailed in his action and (2) the testimony relative to the customary commission rate for manufacturers' representatives in the industry.

On the question of damages, both parties cite Stevens v. Wisconsin Farm Land Co. 124 Minn. 421, 145 N. W. 173 (1914), in support of their arguments on the propriety of the factors which may have been considered by the trial court in making its finding on reasonable value. In Stevens we held that it was error for the trial court to submit to the jury the issue of the reasonable value of plaintiff's services under instructions which made the customary real estate broker's fee determinative of the amount due plaintiff. However, we there said:

"* * * The question at issue was the reasonable value of the services of brokers in effecting an exchange of property. Any

evidence which would throw light on the value of the services was admissible. The time spent, the money expended, the amount involved, the results achieved, and customary charges for similar services, were all proper elements to be considered. Mechem, Agency, § 606; Clark & Skiles, Agency, § 353; Forsyth v. Doolittle, 120 U. S. 73, 7 Sup. Ct. 408, 30 L. ed. 586. In determining the value of the services of an agent, we cannot wholly ignore the benefit of those services to the principal. This is perhaps the most important of the several elements of value. The authorities sustain this position." 124 Minn. 422, 145 N. W. 173.

Thus, the trial court did not err in receiving evidence as to the customary commission rate for manufacturers' representatives in the industry.[1]

Furthermore, it is apparent that the trial court did not treat this evidence as controlling or determinative of plaintiff's rights. As earlier indicated, the evidence, though conflicting, would support a finding that the customary commission was 5 percent of $395,198, less tooling costs, or about $18,700. The trial court found the reasonable value of plaintiff's services in this case to be slightly less than two-thirds of that amount and, therefore, could not be said to have treated the customary commission as controlling.

Defendant further contends that the trial court adopted an improper measure of damages when it awarded as the reasonable value of plaintiff's services the same amount which would have been due Sappa as a negotiated commission had the latter prevailed in the lawsuit. A stipulation entered into by defendant and Sappa at the trial fixed $11,895.18 as the amount due Sappa if he prevailed in his action. We agree with defendant that this stipulation did not extend to plaintiff and that it would have been error for the trial court to have accepted the stipulated figure as controlling on the issue of the reasonable value of plaintiff's services. But we do not agree that the court's finding on reason-

---

[1] See, also, Baker v. Barker, 118 Minn. 419, 137 N. W. 7 (1912).

able value reflects such a treatment of the evidence. While the court's finding on the issue of reasonable value of plaintiff's services does not differ greatly from the figure stipulated to by defendant and Sappa, the fact remains that it does differ. We do not believe that the propriety of the trial court's finding as to value should be determined on the basis of the extent of its variance from a figure which should not have been treated as controlling. Furthermore, we are not prepared to hold that the trial court erred in giving some consideration to the stipulated figure. Cf. Confer Bros. v. Currier, 164 Minn. 207, 204 N. W. 929 (1925). As earlier noted, the stipulation covered the amount which would have been due a manufacturer's representative if it was determined that he was entitled to recover, and the evidence supports a finding that plaintiff was qualified to, and did, perform essentially the same services as would have been performed by a retained manufacturer's representative, such as Sappa. Under those circumstances it cannot be said that the court erred in adopting a figure for reasonable value which was in the same general area as the stipulated amount owing Sappa if he prevailed. In general, the finding as to value in this case falls within the rule set forth in Lovrenchich v. Collins, 233 Minn. 183, 185, 46 N. W. 2d 264, 266 (1951), where we said:

"Although a trial court's finding of reasonable value does not coincide with the valuation figure of any particular witness, if such finding is within the valuation limitations established by the various witnesses or by the evidentiary figures as to cost, and is otherwise reasonably supported by the evidence as a whole, the finding must be sustained. The trial court need not adopt the exact figures of any witness."

■ With respect to the findings of a trial court sitting without a jury, the scope of our review is delineated by Rule 52.01, Rules of Civil Procedure, which in pertinent part provides:

"* * * Findings of fact shall not be set aside unless clearly

erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

The "clearly erroneous" rule was stated to be incapable of precise definition in In re Estate of Balafas, 293 Minn. 94, 198 N. W. 2d 260 (1972). However, we there stated:

"* * * Indeed, the scope of review under this rule may now be regarded as the broadest exercised by an appellate court for, even though there is evidence to support a finding, the finding can be held to be clearly erroneous if 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " 293 Minn. 96, 198 N. W. 2d 261.

In applying the "clearly erroneous" rule in this case, that portion of Rule 52.01 which requires that due regard be given to the opportunity of the trial court to judge the credibility of the witnesses is particularly significant, for there were many irreconcilable conflicts in the evidence relating to the nature and extent of plaintiff's services which the trial court had to resolve before it could make any finding as to reasonable value. After giving due regard to the opportunity of the trial court to judge the credibility of witnesses and considering the entire evidence, we find, as in the Balafas case, "there is no justification for our interference either on the basis of lack of evidentiary support or because of a conviction that a mistake has been committed." 293 Minn. 98, 198 N. W. 2d 262. Accordingly, we affirm.

Plaintiff's request for relief under Rule 138, Rules of Civil Appellate Procedure, upon the grounds that the appeal appears to have been taken merely for delay, is denied.

Affirmed.